The Court gave the instruction, as prayed by Mr. Mason.
Cranch, J.,
contra, who delivered his opinion to the following effect. ■ This is undoubtedly a question of great importance as it regards the interests of the commercial part of the community ; for it is of vast importance that the several obligations of parties to negotiable paper should be certain and well known; and I therefore regret extremely, that I am obliged to give an opinion *225 during the trial of the cause, without that degree of examination and reflection which it merits, especially as I am so unfortunate as to differ from my brethren on the bench. In these circumstances, I cannot say that I do not deliver my opinion with some degree of doubt, although the preponderance of my j udgrnent is at present against giving the direction as prayed.
I had, at first, considerable doubt whether the strict rule of notice was not to be considered as summum jus, which could only be required in case of the failure or insolvency or death of the principal debtor, so that the loss must fall upon one of two parties who were contending de damno evitando. Some of the earlier cases seem to have been decided upon this principle, and in the greater number of cases respecting the liability of the drawer of a bill of exchange and indorser of a promissory note, the judges have qualified the rule with the proviso that some of the parties have become insolvent. Mogadara v. Holt, 1 Show. 318 ; Hart v. King, 12 Mod. 309 ; Borough v. Perkins, 1 Salk. 131; Tassell v. Lewis, Ld. Raym. 744; Lambert v. Oakes, Ld. Raym. 443; Gee v. Brown, Strange, 792; 2 Burr. 674; Heylin v. Adamson, 2 Burr. 674.
But from the expressions of judges in later cases, I am inclined to think that my first doubts on this subject were groundless, and that the necessity of notice is a part of the law merchant attached to a bill of exchange, or rather is a part of the contract itself.
The question, oh which side does the justice of this case lie, depends upon the question what was the contract of the indorser; for it is not just that any man (especially a mere surety) should be held liable upon a contract further than he has consented to bind himself. If his contract was conditional, he canijot be absolutely bound until the condition has been performed.
What then was the contract which the defendant’s testator entered into by indorsing the note ? By the law of Maryland,- which must decide this case, and which on this subject is precisely the same as the law of England, an exact analogy exists between an indorsed promissory note, and an accepted inland bill of exchange. When a promissory note, payable to order, is indorsed by the payee, it is, in truth, an inland bill of exchange drawn by the payee in favor of the indorsee, upon the maker, (his debtor by the note,) and by him accepted. Hence the law respecting both kinds of paper is the same.
The contract of the first indorser of a promissory note is the same with that of the drawer of a bill of exchange. It is an express, not an implied contract. An implied contract is that which the law (to prevent a failure of justice) presumes the parties to have made, where they have failed to make an express contract *226 for themselves, and courts will vary the terms of such implied contract, according to the principles of natural justice. By writing his name on the back of the note, the indorser entered into an express contract, the terms of which are as well known by reference to the law merchant, as if they had been written at large on the note. He does not thereby bind himself to pay at all events. He only says to the holder, if you use due diligence in' demanding the money of the maker and he refuses to pay it, and if you-give me reasonable notice thereof, I will pay you. It being then a part of the express contract between the parties, that the holder should, in reasonable time, demand the money of the maker and give notice of non-payment to the indorser, before the latter can be charged, upon what principle can a court of justice dispense with the performance of those precedent conditions ? There has been no case on a promissory note cited in which it has been dispensed-with, except the case'of DeBerdt v. Atkinson, 2 H. B. 336, and there it was done because the maker of the note was known by all the parties to be insolvent at the time of making and indorsing the note, and therefore the contract of the indorser in that case was not conditional, but absolute. But the authority of that case although attended by such special circumstances, is shaken, if not overruled, by the case of Nicholson v. Gouthit, in the same book, where notice to the indorser of a promissory note was held necessary, although the insolvency of the maker was known to the indorser before the note became payable, and although he had indorsed it for the accommodation of the maker, and merely to obtain him a credit. The latter is, in its circumstances, more like the case now before the Court, than that of DeBerdt v. Atkinson. It has been contended, for the plaintiffs, that the prin-' ciple decided by that case was, that notice to Atkinson was not necessary, because it could be of no benefit to him, and that the insolvency of the maker was only a circumstance showing that such notice could not have been beneficial. But the court, in giving their opinion relied, not on the actual insolvency, but the knowledge of the insolvency, by all the parties at the time of making and indorsing the note, whereby it appeared that the defendant had not annexed the usual conditions to his contract as indorser, but had waived them, and that the waiver was also known to the plaintiffs.
It has also been contended, by the plaintiff’s counsel, that in the case of Nicholson v. Gouthit, it appeared that the defendant had suffered injury by the want of notice. The case was that Burton, the other indorser, had put into the' defendant’s hands funds to meet the payment of the note, but the note not having been demanded when due the defendant had paid away those funds. It *227 may be answered that if the defendant was not entitled to notice, he paid away those funds in his own wrong, and therefore if any damage arose to him in consequence, it could not make notice necessary. It may also be observed, that the court, in giving their opinion did not notice this circumstance as a ground of that opinion, but the chief justice seems to exclude a presumption of that kind, because he says the justice* of the case was with the plaintiff, which could not be true if the defendant had suffered a damage imputable to the laches of the plaintiff. The only ground upon which the Court rested their opinion was that the form of guaranty which the parties had adopted required due notice to the indorser, and therefore, although the justice of the case was with the plaintiff, they could not dispense with such notice. Upon this ground the opinion is certainly inconsistent with the case of DeBerdt v. Atkinson; for in the latter ease the same form of guaranty had been adopted, yet that circumstance was not deemed sufficient to render , notice necessary. But in the other circumstances of the two. cases there was a. material difference. In DeBerdt v. Atkinson the insolvency of the maker was known to all the parties at the time of making and indorsing the note; but in the other case it does not appear that the maker was insolvent, but only embarrassed, at the time of making- and indorsing the note, although he became insolvent before the note became payable, which was eighteen months after date. It did not appear, therefore, that the indorser had, at the time of indorsing, waived the usual conditions annexed to the liability of an indorser. . It may also be observed that in both those cases the question arose upon the insolvency of the makers of the notes.. In the present case no such insolvency is stated in the prayer to the Court. But if those cases will not support the plaintiffs action, they rely on the cases in which it has been decided that a person drawing a bill of exchange without funds in the hands of the drawee, is not entitled to notice. I admit that an analogy exists between an indorsed promissory note and a bill of exchange; but that analogy is not perfect until the bill of exchange is accepted. No case has been cited in which notice has been deemed unnecessary, if the bill has been accepted, and I recollect but one case of the kind, which is that of Walwyn v. St. Quintin, 1 Bos. & Pul. 652, which will be noticed presently. In all the prior cases acceptance had been refused.
It is admitted that cases have decided that if the drawer has neither funds in the hands of the drawee before the bill becomes payable, nor a right to draw, he is not entitled to notice; and the reason is because he cannot expect the bill to be- accepted and paid, and therefore practises a fraud upon the holder, and be *228 cause he cannot suffer any injury by the want of notice. These reasons extend simply to the case of a drawer who has no right to draw, and the bill is not accepted. For if the drawee has promised to accept the bill, then the drawer had a right to expect that his bill will be accepted; and he has practised no fraud upon the holder ; and notice of non-acceptance, and a fortiori notice of non-payment, if the bill has been accepted, may be very material to the drawer, as he would thereby be liable for damages, interest and costs, which he would have a right to recover over against the drawee, who had thus violated his faith in not honoring the drawer’s bill according to promise ; and by the want of notice he may lose his remedy against the drawee by his insolvency. This may be the case where the drawer draws the bill for bis own accommodation without funds, and the drawee engages to accept it to give the drawer a credit. Even in that case then, the reasons given for dispensing with notice, in the cases cited, do not apply. But that is not the present ease. It is contended that this is an accommodation note, that the indorser (the defendant’s testator) never gave any valuable consideration for it, and therefore he stands on the same ground as a drawer without funds.
Let us then consider it as a bill of exchange. It is a bill drawn by the defendant’s testator on W. M. Duneanson (and by him accepted for his own accommodation) in favor of the plaintiffs. It •is not like the case of a bill of exchange drawn for the accommodation of the drawer which I have just stated, and if the reasons for dispensing with notice did not apply to that case, much less can they^to this. If a bill of exchange be drawn to accommodate the drawee, the drawer has a right to expect it will be accepted, and if accepted has not only a right to expect but to insist, that it shall be paid, precisely in the same manner as if he had drawn upon funds in the regular course of mercantile transactions. He stands precisely in the same situation as if the bill had been so drawn. What is the situation of the drawer in a regular transaction ? If his debtor (the drawee) after having agreed to honor the bill refuses acceptance, the holder can immediately call upon the drawer, who, upon taking up the bill, may commence suit against the drawee and recover the principal, interest, damages and costs. So in case of a bill drawn for the accommodation of the drawee; if not accepted, the holder can immediately call upon the drawer, who, upon taking it up, may commence suit against the drawee for the amount of the accommodation he received, with the costs and charges expended by the drawer for his accommodation. Immediate notice of non-acceptance is therefore equally necessary in both cases, a failure of the drawee in either case being equally prejudicial to the drawer. In a regular trans *229 action, if, after acceptance, the acceptor refuse to pay, the drawer, after taking up the bill, may commence suit against the acceptor on the bill and recover the principal, interest, damages and costs. So in the bill drawn to accommodate the drawee, if after acceptance (which is the present case) the acceptor refuse to pay, the drawer, after taking up the bill may commence action against the acceptor and recover the principal, interest, damages and costs. If the acceptor in either case should fail, both drawers would sustain precisely the same injury ; the one by being unable to withdraw his funds to get an indemnification for the interest, damages and costs; and the other by being unable to get a reimbursement of the principal as well as interest, damages and costs. No two cases can be.more parallel. If, then, notice is necessary to a drawer on funds, it is equally necessary to a drawer for the accommodation of the drawee ; for in pari ralione eadem est lex. , To show that the indorser of an accommodation note is not entitled to notice the plaintiff’s counsel cited Christian’s note to 2 Bl. Com. 470. But the writer of that note refers to no case but De Berdt v. Alkinson. The principle may be right (considered in analogy to the cases of drawers without funds and without a right to draw,) when applied to the case of a note drawn to accommodate the in-dorser, because he is the person who is ultimately to pay without retribution; for if he is compelled to pay in the first instance he can never resort to the maker. Such is the case of the drawer without funds. If he is obliged to pay the bill in the first instance he never can come upon the drawee. In these cases the insolvency of the maker or of the drawee can make no difference to the indorser of the note or the drawer of the bill; and as they are the principal debtors on the note and bill, notice to them can be of no use. But if the principle should-be applied to the case of a nóte indorsed for the accommodation of the maker, it will be applied without the support of any of the reasons which have been alleged to justify the want of notice in the case of a drawer without funds. The only case reported, within my recollection, which has decided that the drawer of an accepted bill is not entitled to notice, is that of Walwyn v. St. Quintin, 1 B. & P. 652, and in that case the bill was for the accommodation of - the payee, and the action was by the indorsee against the drawer. The acceptor had funds of the payee but not of the drawer. I confess it is difficult to understand the reasoning of the Chief Justice in delivering the opinion of the court, in that case. He says, — “ as far as concerns the drawer, it is what it has been called, a mere accommodation.” This is true, but it was not for his own accommodation, which seems to me to be the only kind of accommodation which will j ustify the want of notice. He then proceeds, — “ and all eon- *230 sideration of effects of the drawer in the hands of the acceptor may be laid aside.” This again is strictly and literally true. But the drawer had a fair pretence for drawing, and the acceptance was on the ground of a fair mercantile agreement. For it is stated that the drawee had actually accepted the bill on the faith of funds put into his hands by the payee to meet the payment. And in the next page his Lordship says : “ But it may be proper to caution bill-holders not to rely on it as a general rule, that if the drawer has no effects in the acceptor’s hands, notice is not necessary. The cases of acceptances on the faith of consignments from the drawer not come to hands, and the case of acceptances on the ground of fair mercantile agreements, maybe stated as exceptions, and there may be possibly many others.” In the next sentence, also, he seems to admit that where the drawer has no effects in the hands of the drawee, yet if he has “ a fair pretence for drawing ” although it is for the purpose of raising money by discount for himself, yet he is entitled to notice. Here then seems to be a difference between the opinion and the judgment of the court which it is difficult to reconcile. He proceeds: “ It seems clear that notice can be of no use to him (the drawer) ; his situation being this, that if the acceptor does not pay, he must; and may then, and not till then, resort to the acceptor to be reimbursed ; notice, therefore, can amount to nothing, since his situation cannot be changed.” So in the case of a real negotiation, the situation of the drawer is, that if the acceptor does not pay, he must, provided he has due notice. If the Chief Justice meant to say that the defendant, St. Quintín, was absolutely bound to pay if the acceptor did not, it was begging the question. But his argument seems to rest on the ground that the drawer could not resort to the acceptor until he (the drawer) had paid the bill. But notice was necessary to .him, that he might know where to apply to take up the bill, before the acceptor shall become insolvent. Notice also might be of use to him, even before payment, as thereby he would take measures to get security from the acceptor, to indemnify himself when the bill should come back to him. His situation would certainly be very much changed by the want of notice, if the acceptor should fail after the bill became payable ; for if due notice had been given he might have taken up the bill, and compelled the acceptor to repay him the money.
His Lordship says : “ Perhaps, indeed, it (notice) ought never to be dispensed with, since it is a part of the same custom of merchants, which creates the duty; especially as the grounds for dispensing with it, are such as cannot influence the conduct of the holder of a bill, at the time when he is to determine whether he will, or will not give notice; for' ninety-nine times in a *231 hundred, he cannot know whether the drawer have or have not effects in the hands of the acceptor, or for whose accommodation the bill was drawn. It has, however, been resolved in many cases, where the drawer has had no effects in the hands of the acceptor, that notice might be dispensed with.” This last position seems to have been taken for granted ; but I can find no such cases. In all the prior cases, the bill had not been accepted.
He also says: “ Where the drawer has no effects, and has no fair pretence for drawing, or where he draws without having effects intended to be applied in payment, and only for the purpose of raising money by discount for himself, and a fortiori for the acceptor, which is this case, it is fairly deducible from the cases which have been resolved, that notice need not be given.”
Where the bill is drawn and accepted (without funds) for the accommodation of the drawer, it may be admitted that the drawer is not entitled to notice, without affecting the present case; but it is difficult to conceive why there should be a stronger reason for dispensing with notice to the drawer, where the bill is drawn for the accommodation of the acceptor, than where it is drawn for the accommodation of the drawer. Indeed, in the former case, I can see no reason for dispensing with notice which will not apply to every possible ease.
But if this is to be taken as a bill of exchange, can it be said that French, the drawer, had not funds in the hands of Duncan-son, the acceptor, before the bill became payable ? This action is brought by the plaintiffs, the indorsers of the note, or payees of the bill, against their immediate indorser. They can only support their action, by showing the money to be paid to him or to his use. They paid the money to Duneanson, the maker of the note, or acceptor of the bill. Unless this payment can be applied to French, the indorser, there was no consideration between the plaintiffs and defendant. It is only by considering the money as paid by the plaintiffs to French, and by French to Duneanson, that the plaintiffs can maintain their action. The money, then, which was thus paid, was the funds of French in the hands of Duneanson, upon which French had a right to draw this bill in favor of the plaintiffs. The money in Duneanson’s hands, was the fund out of which the note was to be paid, and the non-appli-’ cation of that fund to the object for which it was intended, was a sufficient reason why notice ought to have been given to French, in order that he might get the fund into his own hands, or secure himself against his responsibility.
But, it is said, that in this case it is stated that French has received no injury, by want of notice. This may be truly said, for French has not yet been compelled to pay the money. It *232 may be answered, that if French was entitled to notice, the fact that he had not received injury by the want of it, would not be sufficient to dispense with it; and such evidence ought not to be received, and if received, ought not to be regarded. Before the plaintiffs can be let in to give such evidence, they must show that French was in the situation of a drawer without funds and without a right to draw, and that notice could not have been of any use to him.
There is another reason why I cannot consent to give the direction as prayed. It'appears, by the case stated for our opinion, that the last day of grace on the note was the 12th of December, and that no demand of payment was made upon the maker of the note until the 15th of December. This was giving a new credit to the maker ; and although French might be responsible without notice, if due diligence had been used in demanding the money from the maker, yet it is certainly competent for the plaintiffs to release him from that responsibility; and I am not clear that they have not done so by giving this new credit.
The ease also states a negotiation between the defendant’s agent and the plaintiffs for the adjustment of this note. If that is intended to be argued before the jury, or in the court above, as a waiver of the right to notice, I cannot.let it go without also instructing the jury that if they should be satisfied that that negotiation was entered into by the agent without a knowledge of the fact of want of notice, and of the law arising upon that fact, it did not amount to a waiver of the right to notice. ■
Mr. Gantt then prayed the Court to instruct the jury, that if the jury should be of opinion, from the evidence, that the plaintiffs neither paid nor gave any valuable consideration to the defendant’s testator for the note, they could not recover. Kyd, p. 277.
The CouRT refused the instruction as prayed, but directed them, that if they should be of opinion that the note was drawn by W. M. Duneanson, and indorsed and delivered by G. French to the plaintiffs, and that thereupon the plaintiffs paid the money to W. M. Duneanson, with the knowledge and assent of G. French, there was a sufficient consideration as between the plaintiffs and G. French. [1]
Mr. Gantt then prayed the Court to instruct the jury, (in substance,) that the money so paid to W. M. Duneanson, was such a consideration moving from French to Duneanson, as to entitle French to due notice of the non-payment, and to make the laches of the plaintiffs in not demanding payment of Duneanson until the 15th of December, a discharge of French from his liability; and that such laches and want of notice, if proved, would discharge him accordingly.
*233 But the CodRT refused to give the instruction.
Cranch, J., contra.
Verdict for the plaintiffs, ¡fl.917.[1]

 Tie judgment in this ease was reversed by the Supreme Court of the United States. See 4 Cranch, 135. .